UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WILLIAM D. AARON, JR., ET AL.                            CIVIL ACTION

VERSUS                                                        No. 22-09

ILLINOIS NATIONAL INSURANCE                             SECTION I
COMPANY, ET AL.


ORDER & REASONS

Before the Court are two motions[1] for summary judgment.  The first motion[2]

is filed by a group of former directors ("the directors") of the now-defunct First NBC

Bank ("First NBC").[3]  The second motion[4] is filed by the Federal Deposit Insurance

Corporation as receiver for First NBC ("the FDIC").  Both motions concern whether

certain "warranty letters" that were executed when applying for excess insurance

policies may preclude coverage because the warranty letters were allegedly false.

The defendants, four insurance companies[5] who issued the excess policies, oppose[6]

---

[1] R. Doc. Nos. 61 & 70.

[2] R. Doc. No. 61 (motion); R. Doc. No. 130 (reply memorandum); R. Doc. No. 147 (letter to the Court).

[3] The group of directors include William D. Aaron, Jr., Herbert W. Anderson, Dale Atkins, John C. Calhoun, William Carrouche, John F. French, Leon Giorgio, Jr., Shivan Govindan, Lawrence Blake Jones, Herman Moyse, III, Grish Roy Pandit, James Roddy, Jr., Charles Teamer, Joseph Toomy and Richard M. Wilkinson.  *See* R. Doc. No. 61-1, at 1.

[4] R. Doc. No. 70 (motion); R. Doc. No. 129 (reply memorandum).

[5] The insurance companies include Illinois National Insurance Company ("Illinois National"), Continental Casualty Company ("Continental Casualty"), Great America E&S Insurance Company ("Great American"), and Federal Insurance Company ("Federal Insurance").  *See, e.g.*, R. Doc. No. 61-1, at 3.

[6] R. Doc. Nos. 104, 106, 108, 111, 117, 135.

the motions.  For the following reasons, the Court denies the motions for summary judgment as premature.

## I.

This civil action stems from the failure of First NBC. [7]  The directors maintain that in June 2015, First NBC procured a primary insurance policy from Zurich American Insurance Company ("Zurich Insurance"), and the primary policy included directors' and officers' liability ("D&O") insurance coverage.[8]  The Zurich Insurance primary policy provided fifteen million dollars ($15,000,000.00) in D&O coverage.[9]

First NBC also purchased four excess insurance policies, which are the focus of the instant motions for summary judgment.  Illinois National's excess D&O policy, which is the first-layer excess policy, provided fifteen million dollars ($15,000,000.00) in coverage.[10]  Continental Casualty provided the second-layer excess policy, consisting of ten million dollars ($10,000,000.00) in coverage.[11]  Great American provided the third-layer excess policy, consisting of ten million dollars

---

[7] As explained below, the instant motions for summary judgment were filed before the parties had completed any discovery in this case.  *See*, *e.g.*, R. Doc. No. 117-4 (Illinois National's Rule 56(d) declaration signed under penalty of perjury), at 2.  In this posture, the insurance company defendants contend that they require additional time for discovery to present evidence to oppose summary judgment.  With respect to the instant motions for summary judgment, the "court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)).

[8] R. Doc. No. 1, at 3–4.

[9] *Id*. at 4.

[10] *Id*.

[11] *Id*.

($10,000,000.00) in coverage.[12]  Federal Insurance provided the fourth-layer excess policy, consisting of ten million dollars ($10,000,000.00) in coverage.[13]  Overall, the total amount of coverage afforded by these policies—*i.e.*, the Zurich Insurance primary policy and the four excess insurance policies—is sixty million dollars ($60,000,000.00).[14]

In June and August 2015, in connection with the applications for the excess D&O policies, each defendant requested a signed statement[15] from a First NBC official.  The Court will refer to these statements as the "warranty letters."  First NBC President and CEO Ashton J. Ryan, Jr. ("Ryan") signed the first three warranty letters (*i.e.*, the letters to Illinois National, Continental Casualty, and Great American).[16]  First NBC Senior Executive Vice President Marsha S. Crowle ("Crowle") signed the last letter to Federal Insurance.[17]  The precise language of each warranty letter is different, but in general the letters each state that no officer or director for the proposed excess insurance had any knowledge of any act or omission that could give rise to a claim under the excess policies.[18]

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *See* R. Doc. No. 61-4, 61-5, 61-6, & 61-7.

[16] R. Doc. No. 61-4 (Illinois National), 61-5 (Continental Casualty), & 61-6 (Great American).

[17] R. Doc. No. 61-7.

[18] *See, e.g.*, R. Doc. No. 61-4 (Illinois National warranty letter) ("No person or entity proposed for insurance under the policy referenced above has knowledge or information of any act, error or omission which might give rise to a claim(s), suit(s), or action(s) under such proposed policy[.]").

On May 5, 2016, Eric R. Kinzler ("Kinzler")—a First NBC stockholder—filed a complaint in the United States District Court for the Eastern District of Louisiana, bearing the caption *Eric R. Kinzler v. First NBC Bank Holding Company, Ashton J. Ryan, Jr., and Mary Beth Verdigets*, Civil Action No. 16-4243 ("the *Kinzler* action").[19] The *Kinzler* action alleged that "[i]n the Spring of 2016, First NBC announced that its accounting dating back to 2011 was riddled with errors."[20]   The *Kinzler* action further alleged that the defendants "made false and misleading statements by misrepresenting the Company's business and prospects and engaged in a scheme to deceive the market" by "artificially inflat[ing] the price of First NBC common stock," and this scheme "operated as a fraud or deceit on [First NBC stock purchasers]."[21]

On April 28, 2017, the Louisiana Office of Financial Institutions closed First NBC, and the bank was placed into receivership under the auspices of the FDIC.[22] First NBC also filed for bankruptcy in May 2017.[23]

On August 5, 2021, the United States obtained a thirty-six page second superseding indictment against Ryan and four other co-defendants.[24]   In the second

---

[19] R. Doc. No. 1, at 5; R. Doc. No. 61-12.  *See also United States v. Hunstberry*, 956 F.3d 270, 285 (5th Cir. 2020) ("It is well-settled that courts may judicially notice court records as evidence of judicial actions.").

[20] R. Doc. No. 61-12, at 4.

[21] *Id.* at 17.  The *Kinzler* action has been stayed.  *Kinzler v. First NBC Holding Co., et al.*, No. 16-4243, 2021 WL 5280606 (E.D. La. Nov. 21, 2021) (Morgan, J.).

[22] R. Doc. No. 61-2, at 4.

[23] *Id.*

[24] *See United States v. Ryan, et al.*, Criminal Action No. 20-65 (E.D. La.) ("*United States v. Ryan*"), R. Doc. No. 318 (second superseding indictment).   William J. Burnell, Robert B. Calloway, Frank J. Adolph, and Fred V. Beebe were also named in the indictment. *Id.* at 3–5.  On July 10, 2020, the United States first obtained an

superseding indictment, the grand jury charged that Ryan was responsible for "developing and executing [First NBC's] strategic plan, overseeing all of [First NBC's] affairs, and managing [First NBC's] day-to-day operations."[25]  The grand jury further charged that Ryan conspired to commit bank fraud by disguising the true financial status of certain borrowers and their troubled loans in order to conceal the actual financial condition of First NBC.[26]

In a letter dated October 11, 2021, counsel for Illinois National communicated that Illinois National had determined that the June 9, 2015 warranty letter that Ryan signed "was false when provided and acts as a bar to coverage for all insureds under the $5 million, excess of $10 million, portion of the $15 million" Illinois National excess policy.[27]  The other excess insurance company defendants have also asserted that the warranty letters act as a bar to coverage under their policies.[28]

Before the discovery period began in this case, the directors and the FDIC moved for summary judgment, contending that the warranty letters do not preclude coverage with respect to the excess insurance policies.[29]  Each of the insurance company defendants have submitted declarations under penalty of perjury, pursuant

---

indictment in the case against Ryan, *see* R. Doc. No. 1, and subsequently a superseding indictment.  *See* R. Doc. No. 65.

[25] *See United States v. Ryan*, R. Doc. No. 318, at 2.

[26] *Id.* at 6–7.

[27] R. Doc. No. 61-16, at 5.

[28] R. Doc. No. 1, at 7.

[29] *See generally* R. Doc. Nos. 61 & 70.  *See also* R. Doc. No. 117-4, at 2 ("As of the date of this [declaration], there has been no opportunity to conduct any discovery in this case.").

to Federal Rule of Civil Procedure 56(d), that the defendants need to conduct further discovery in order to oppose the motions for summary judgment.[30]

Illinois National and Continental Casual both noted in their Rule 56(d) statements that the instant action is related to the case *FDIC as Receiver for First NBC Bank v. Ryan, et al.*, Civil Action No. 20-1253 (E.D. La.) ("the *FDIC v. Ryan* matter").[31]  Illinois National and Continental Casual both maintain that Illinois National served discovery requests in July 2020 in the *FDIC v. Ryan* matter, but that the directors and the FDIC refused to respond.[32]  They further maintain that the *FDIC v. Ryan* matter has been stayed and no further discovery has been propounded.[33]

Overall, each of the insurance company defendants requests an opportunity to conduct discovery in the instant case.  The defendants have identified several issues that they maintain require discovery, such as the knowledge and information that Ryan and Crowle possessed when they signed the warranty letters,[34] and the

---

[30] R. Doc. Nos. 104-2, 106-2, 108-2, 111-9, 117-4, & 135.

[31] R. Doc. No. 108-2, at 2; R. Doc. No. 117-4, at 2.

[32] R. Doc. No. 108-2, at 2; R. Doc. No. 117-4, at 2.

[33] United States District Judge Mary Ann Vial Lemmon stayed the *FDIC v. Ryan* matter "pending resolution of the related criminal matter [in *United States v. Ryan*]." *FDIC v. Ryan*, R. Doc. No. 120, at 1.  Judge Lemmon stayed the case on the United States' motion, observing that the risk that proceedings in the *FDIC v. Ryan* matter "will impinge on the criminal proceeding is real."  *Id*. at 8.  *See also FDIC v. Ernst & Young, LLP, et al.*, No. 20-1259, 2020 WL 3960345, at *4–8 (E.D. La. July 13, 2020) (Fallon, J.) (staying another civil action arising out the First NBC failure).

[34] R. Doc. Nos. 104-2, at 2; 106-2, at 2; 108-2, at 3; 117-4, at 3.

communications that occurred between the FDIC and the directors before First NBC purchased the excess insurance policies.[35]

## II.

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "Rule 56(d) motions for additional discovery are 'broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot

---

[35] R. Doc. Nos. 104-2, at 2; 106-2, at 2; 108-2, at 3; 117-4, at 3.

adequately oppose.'" *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).   "When a party is not given a full and fair opportunity to discovery information essential to its opposition to summary judgment, the limitation on discovery is reversible error." *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 892 (5th Cir. 2021) (citation omitted).

Nevertheless, the party filing the Rule 56(d) motion or affidavit must demonstrate "how additional discovery will create a genuine issue of material fact." *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 445 (5th Cir. 2001) (citation omitted). More specifically, "the non-moving party must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Biles*, 714 F.3d at 894 (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). "The nonmovant may not simply rely on vague assertions that discovery will produce needed, but unspecified, facts." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

### III.

The Court has extensively reviewed the record, the arguments of counsel, and the law.   It is clear that there exist numerous genuine issues of material fact such that summary judgment is not warranted at this time.

All of the insurance company defendants have submitted declarations under penalty of perjury, pursuant to Federal Rule of Civil Procedure 56(d), stating that

they cannot adequately oppose summary judgment without conducting discovery.[36]
Collectively, these declarations maintain that discovery is essential to oppose the
motions for summary judgment.[37]  Further, the *FDIC v. Ryan* matter was previously
stayed, thereby halting any discovery from proceeding.[38]

Based on the parties' arguments with respect to whether the insurance
companies' warranty letters may preclude coverage, the insurance company
defendants have demonstrated that genuine issues of material fact exist concerning
the knowledge that any director may have possessed when Ryan and Crowle executed
the warranty letters and whether the warranty letters were false.  In this posture,
and given that "Rule 56(d) motions for additional discovery are 'broadly favored and
should be liberally granted,'" *Am. Family Life Assurance Co.*, 714 F.3d at 894, the
entry of summary judgment on an incomplete record would be premature.  That
prematurity warrants denial of the motions for summary judgment.  *See, e.g., I.T.O.
Corp. v. M/V Kapitan Dzhurashevich*, No. 96-1858, 1997 WL 335578, at *3 (E.D. La.
June 17, 1997) (Duval, J.) ("The court believes that it would be premature to resolve
the critical legal determination of whether I.T.O. is entitled to recover under the
FMLA, since the resolution of these underlying factual issues will shape the court's
application of the law.").[39]

---

[36] R. Doc. Nos. 104-2, at 2; 106-2, at 2; 108-2, at 4; 111-9, at 2; 117-4, at 2; & 135, at
3.

[37] *See, e.g.*, R. Doc. No. 117-4, at 3–5 (identifying 13 categories of information that
Illinois National seeks to pursue in discovery).

[38] *Id.* at 2; *see also FDIC v. Ryan*, R. Doc. No. 120 (order & reasons staying case).

[39] *See also Smith Marine Towing Corp. v. EPL Oil & Gas, Inc.*, No. 15-5492, 2016 WL
231096, at *2 (E.D. La. Jan. 19, 2016) (Fallon, J.) ("Considering the foregoing,

**IV.**

For all the foregoing reasons,

**IT IS ORDERED** that the directors' motion[40] for summary judgment and the

FDIC's motion[41] for summary judgment are **DENIED**.[42]

---

Defendants' motion for summary judgment is premature. Initial disclosures have not been exchanged, a preliminary scheduling conference has not taken place, and no discovery has been conducted. Plaintiffs are entitled to discovery regarding the applicable contracts between Defendants and Cal Dive. Before the contracts and other relevant discovery is reviewed, it is premature for this Court to make legal determinations as there may be facts in dispute."); *SeaTrepid Intern., LLC v. MK Salvage Venture, LLC*, No. 13-51, 2013 WL 4012655, at *2 (E.D. La. Aug. 5, 2013) (Engelhardt, J.) ("Thus, it is not the case that the waiver clause is *per se* enforceable regardless of what facts are established concerning liability. Consequently, in this case, it would be inappropriate to issue summary judgment at this early juncture on the issue of damages without giving the plaintiff-in-counterclaim an opportunity to conduct discovery on the underlying facts.").

[40] R. Doc. No. 61.

[41] R. Doc. No. 70.

[42] The Court notes a concern that is readily apparent from the defendants' Rule 56(d) declarations. Certain insurance companies have expressly stated their intent to pursue discovery concerning Ryan and the United States' pending criminal matter. For instance, Illinois National submits that it will require discovery concerning "the knowledge or information possessed on or before June 9, 2015, by Ashton Ryan of any act, error or omission which might give rise to a claim(s), suit(s) or action(s) under the Illinois National Policy." *See* R. Doc. No. 117-4, at 3; *see also* R. Doc. No. 180-2, at 3. Federal Insurance declared its intent to pursue discovery of "documents and information produced in the criminal, regulatory, and civil actions submitted to Federal [Insurance] for coverage[.]" *See* R. Doc. No. 104-2, at 2.

Whether discovery in this case may impinge upon the United States' pending criminal action—or a witness' Fifth Amendment rights against self-incrimination—are questions that the Court does not resolve now. However, out of an abundance of caution, the Court notes that future briefing on such issues may be necessary. In any event, summary judgment is not proper on the available record, and the defendants have identified genuine issues of material fact that can only be resolved through discovery.

New Orleans, Louisiana, June 27, 2022.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**