**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WILLIAM D. AARON, JR., ET AL** | **CIVIL ACTION** |
| **VERSUS** | **No. 22-9** |
| | **c/w 22-2070** |
| | **REF: ALL CASES** |
| **ILLINOIS NATIONAL** | **SECTION I** |
| **INSURANCE COMPANY ET AL** | |

## ORDER

Before this Court are the United States of America's ("the government")

motions[1] to intervene in and to stay the above-captioned case. The case arises out of

the demise of First NBC Bank Holding Co. ("First NBC"), as does the pending parallel

federal criminal case, *United States v. Ashton Ryan et al.*, E.D. La. Case No. 20-65.

Parties to this case William D. Aaron, Jr., Herbert W. Anderson, Dale Atkins,

John C. Calhoun, William Carrouche, John F. French, Leon Giorgio, Jr., Shivan

Govindan, Lawrence Blake Jones, Herman Moyse, III, Grish Roy Pandit, James

Roddy, Jr., Charles Teamer, Joseph Toomy, Richard M. Wilkinson, Louis Lauricella,

Mark Merlo, and Leander Foley (collectively, the "Directors") filed a partial

opposition[2] to the government's motions, as did plaintiff Illinois National Insurance

---

[1] R. Doc. Nos. 187, 189. The government submitted nearly identical motions to intervene in and to stay in the cases *William D. Aaron, Jr., et al v. Illinois National Insurance Company*, E.D. La. Case No. 22-9, and *Illinois National Ins. Co. v. Ashton Ryan, et al*, E.D. La. Case No. 22-2070. R. Doc. Nos. 187, 189, respectively. The latter case was subsequently consolidated with the former case. R. Doc. No. 188. This order and reasons will refer to the consolidated action.
[2] R. Doc. No. 197.

Company ("Illinois National").[3] Neither the Directors nor Illinois National objects to the government's motions to intervene, but both request a limited stay.

Fred V. Beebe ("Beebe"), defendant in the civil case and defendant in the parallel federal criminal case *United States v. Ryan*, E.D. La. Case No. 20-65, has filed an opposition to both the government's motions to intervene and to stay.[4] For the reasons discussed below, the Court grants the government's motions to intervene in and to stay the above-captioned case.

## I.     LAW AND ANALYSIS

### A. The Government's Motions to Intervene

Federal Rule of Civil Procedure 24 provides for intervention "as of right"—also referred to as "mandatory" intervention—and "permissive" intervention:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> > (1) is given an unconditional right to intervene by a federal statute; or
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) Permissive Intervention.
>
> > (1) In General. On timely motion, the court may permit anyone to intervene who:
> > (A) is given a conditional right to intervene by a federal statute; or
> > (B) has a claim or defense that shares with the main action a common question of law or fact.

---

[3] R. Doc. No. 198.
[4] R. Doc. No. 199.

In the motions before this Court, the government seeks either mandatory intervention or permissive intervention. Because the Court finds that intervention is mandatory, the Court need not reach the issue of whether permissive intervention is also appropriate.

As established by the Fifth Circuit, the "four parts of the [mandatory] intervention test are . . . (1) timeliness, (2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by existing parties." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009). As the government satisfies each of these four requirements for mandatory intervention, this Court finds that intervention by the government in the pending civil action before this Court is mandatory. Each requirement is discussed in greater detail below.

### i.    Timeliness

First, the government's motions to intervene are timely.[5] The Fifth Circuit's test for timeliness of intervention asks the Court to consider "(1) the length of time between the would-be intervenor's learning of his interest and his petition to intervene, (2) the extent of prejudice to existing parties from allowing late intervention, (3) the extent of prejudice to the would-be intervenor if the petition is denied, and (4) any unusual circumstances." *Id.* at 247–48. However, "[t]he

---

[5] "[T]he question whether an application for intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977).

requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 422 (5th Cir. 2002) (internal citation and quotations omitted).

With regards to the first element of the timeliness test, as noted by Beebe in his opposition,[6] the government waited over eight months after the present civil action was initiated to file its motions to intervene. Beebe argues vociferously against granting the intervention, alleging that he will "suffer extreme prejudice if the government's request is granted."[7] "[T]he Court," Beebe further asserts, "should be genuinely troubled by the Government's eleventh-hour decision to enter this civil matter and put its finger on the scale to obtain relief that offends justice—to have this Court assist it in divesting its litigation adversary of counsel."[8]

However, the Fifth Circuit has established that the timeliness "analysis is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205, 1207 (5th Cir. 1994). "A court should ignore 'how far the litigation has progressed when intervention is sought[,] . . . the amount of time that may have elapsed since the institution of the action . . . [, and] the likelihood that intervention may interfere with the orderly judicial processes.'" *Am. V Ships Ltd. v. Norica Eng'g Servs.*, 34 F. App'x. 151, 2002 WL 496377, at *3 (5th Cir. 2002) (quoting *John Doe #*

---

[6] R. Doc. No. 199, at 6–10.

[7] *Id.* at 7.

[8] *Id.* at 2. Beebe's argument regarding the timeliness of the government's motions to intervene begs the question: would these concerns not have nonetheless arisen even had the government filed its motion to intervene earlier?

*1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001)). In short, the government's delay in filing its motions to intervene should be viewed in context. That context is provided in the government's reply to the oppositions, where the government notes that, "[b]ecause staying the [civil case] could potentially affect pending criminal defendants' funding of their defenses, the government did not seek to intervene in these cases immediately after the complaint was filed."[9] Additionally, the initial indictment in the criminal action was filed on July 10, 2020,[10] at least a year and a half prior to the filing of the consolidated civil actions before this Court.[11] Given this context, the government's delayed filing does not render the motions untimely. The first element of the timeliness test therefore weighs in favor of finding the motions to intervene to be timely.

Considering the second element of the timeliness test—the extent of the prejudice to the existing parties caused by the would-be intervenor's late intervention—the prejudice to the existing parties is minimal. The opposing parties offer no evidence that the civil case would have progressed more efficiently or fairly had the government sought to intervene earlier. The prejudice to the existing parties who are also defendants in the parallel criminal proceeding was even arguably *reduced* by the government's delayed intervention. As the government noted, it is possible that the government's intervention in the pending litigation would impact

---

[9] R. Doc. No. 187, at 10; R. Doc. No. 189, at 10.
[10] E.D. La. Case No. 20-65, R. Doc. No. 1
[11] The consolidated cases E.D. La. Case Nos. 22-9 and 22-2070 were filed on January 3, 2022 and July 6, 2022, respectively.

the defendants' ability to pay counsel.[12] Thus, the earlier the government intervened and sought a stay, the longer the defendants would have potentially had to personally fund their defenses. For these reasons, the second element of the test weighs in favor of granting the government's motions to intervene.

Continuing to the third element in the Fifth Circuit's timeliness test, the prejudice to the would-be intervenor—the government—if the motions to intervene were to be denied is significant. As noted in its reply to the oppositions, the government has an important "law enforcement interest in managing the scope and manner of discovery in the criminal case, in protecting the integrity of the criminal proceedings and its truth-seeking process, and in preventing civil discovery from impairing or influencing the evidence and testimony that is expected to be offered in the criminal case."[13] Preventing the government from intervening would hinder the government's ability to achieve these aims.[14]

---

[12] Indeed, Beebe asserts that granting the government's motions to intervene and to stay would have this precise effect. *See* R. Doc. No. 199, at 9–10 (arguing that one of the "broader implications of the Government's motions" is that "Beebe and his co-defendants' defenses will be impaired by their loss of funding for defense in the criminal case.").

[13] R. Doc. No. 214, at 2.

[14] Multiple sections of this court agree. *See e.g.*, *Kinzler v. First NBC Bank Holding Co.*, No. 16-4243, 2021 WL 5280606 (E.D. La. Nov. 12, 2021) (Morgan, J.) (discussing the public's interest in preserving the integrity and efficient functioning of criminal proceedings); *Fed. Deposit Ins. Corp. v. Ernst & Young LLP*, No. 20-1259, 2020 WL 3960345 (E.D. La. July 13, 2020) (Fallon, J.) (granting stay of entire proceeding); *Cont'l Cas. Co. v. St. Angelo*, No. 19-13382, 2020 WL 425865, at *3 (E.D. La. Jan. 27, 2020) (Vitter, J.) (noting the public's "strong interest in allowing law enforcement officials to perform their jobs, uncover evidence of criminal activity, and bring those persons responsible for criminal activity to justice."); *Academy Place v. Ryan*, No. 18-10881, 2019 WL 3974793 (E.D. La. Aug. 22, 2019) (Vitter, J.) (same).

Finally, the fourth element of the timeliness test asks the Court to consider "any unusual circumstances that weigh in favor of or against a finding of timeliness." *Glickman*, 256 F.3d at 376 (quoting *Stallworth*, 558 F.2d at 264–66). First, the Court notes that neither the Directors nor Illinois National—parties spanning both sides of the civil litigation—oppose the government's motions to intervene,[15] both explicitly acknowledge the government's interests in the matter and in intervention,[16] and neither raise concerns regarding the timeliness of the government's motions to intervene. As Beebe's opposition to the government's intervention centers on issues of fairness that would have arisen no matter when the government sought to intervene in and stay the civil proceedings, this final factor weighs in favor of finding the government's motions to intervene to be timely.

Accordingly, considering all elements of the Fifth Circuit's timeliness test, the Court finds that the government has timely filed its motions to intervene.

### ii.   *Government's Interest*

The remaining three requirements of the Fifth Circuit's mandatory intervention test are that the would-be intervenor has "(2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by existing parties." *In re Lease Oil*, 570

---

[15] R. Doc. No. 197, at 5; R. Doc. No. 198, at 1.

[16] *See* R. Doc. No. 198, at 2 ("Illinois National fully acknowledges and respects the Government's sensitivities when prosecuting a criminal case."); *see also* R. Doc. No 197, at 5 ("The Directors have no opposition to the Government's request to intervene in this case, and they recognize the Government's interest in this matter.").

F.3d at 247. All three requirements are met here. As noted in *Southeast Recovery Group, LLC v. BP America, Inc.*, 278 F.R.D. 162 (E.D. La. 2012) (Wilkinson, Mag.),

> [t]he United States, in its role as criminal prosecutor, "is so situated that disposing of the [civil] action," particularly permitting the broad-ranging discovery planned by the civil parties, "may as a practical matter impair or impede the [government's] ability to protect its interest," Fed.R.Civ.P. 24(a)(2), specifically, its unique investigative and prosecutorial interests. Although the civil defendant has an interest in proving plaintiffs['] alleged fraud, . . . its burden of proof as to its civil affirmative defense is far less than the burden the government must sustain in the criminal matter, so that no existing party adequately represents the prosecutorial or investigative interests of the United States.

*Id.* at 167. Here, as in *Southeast Recovery Group*, the government has a clear interest in the civil proceeding, as there is significant overlap in questions of law and fact between the civil and the criminal proceedings. While a party may share the government's interest in uncovering facts essential to their legal positions, no party adequately represents the government's interest in maintaining the integrity of the investigative and prosecutorial processes.

Beebe asserts that the government's interest in preventing the civil discovery process from undermining or influencing the evidence offered during the criminal trial is not a sufficient interest to warrant intervention as of right pursuant to Rule 24(a).[17] To support this argument, Beebe largely relies on *Tuttle v. City of Houston*,

---

[17] Beebe's opposition also states that the government's interests are allegedly adequately represented by existing parties—namely, the defendant insurance companies. *See* R. Doc. No. 199, at 12. The interest these groups share, Beebe's opposition implies, is to undermine or "defeat" Beebe's ability to pay for his counsel. *Id.* at 12–13. As Beebe has offered no evidence that this was the interest animating or the intent of the government's motions to stay, the Court will not address this

No. 21-270, 2021 WL 2641439 (S.D. Tex. June 9, 2021). In *Tuttle*, the United States District Court for the Southern District of Texas held that, "[a]lthough the Court recognize[d] the District Attorney's paramount interest in trying the State's Criminal Prosecutions and seeing that justice be done, the District Attorney has not identified a stake in the outcome of this dispute beyond the discovery process" and, "[f]or that reason, the District Attorney has failed to demonstrate a sufficient interest in the 'disposition' of the Civil Suits to support intervention of right." *Id.* at *3. This case is inapposite for two reasons.

First, Fifth Circuit precedent makes it clear that the government's prosecutorial interests are not only valid interests under Rule 24(a), they are paramount: "Fifth Circuit precedent advises that [plaintiffs' interest in the speedy resolution of civil litigation] is subservient to law enforcement's prerogative in this situation." *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-0366, 2015 WL 893447, at *10 (E.D. La. Mar. 2, 2015). As stated by the Fifth Circuit in *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962),

> [t]he very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.

---

argument. The Court will, however, note that impugning the motives of an adversary with no factual basis to do so is an unproductive and unprofessional tactic. Such tactics may have the unintended consequence of undermining the persuasiveness of counsel's arguments.

*Id.* at 487. The government's law enforcement interests and interest in preserving evidence and witness testimony that may be employed at trial are indisputably valid interests upon which it may seek a stay pursuant to Rule 24(a).

Second, in *Tuttle* the factual questions at issue in the civil action and in the criminal proceeding were different.[18] The Tuttle court itself highlighted this crucial fact: "The District Attorney has not explained, nor can the Court ascertain, how Plaintiffs' allegations of wrongful conduct against these twelve Defendants overlap with the wrongful conduct alleged in any of the State's Criminal Prosecutions." 2021 WL 2641439, at *5. By contrast, the factual question at the core of both the civil case pending before this Court and the parallel criminal proceeding is the same: what did First NBC's officers know regarding the bank's financial situation? The facts that answer this question could very well be outcome determinative in the civil case, and could play a significant role in the criminal case.

Accordingly, the government's interest in protecting the integrity of the criminal proceedings here is far stronger than the District Attorney's interest in *Tuttle* and satisfies the requirements of Rule 24(a). Disallowing the government's intervention in the civil case would hinder its ability to "manag[e] the prosecution

---

[18] In *Tuttle*, the civil plaintiffs alleged multiple 43 U.S.C. § 1983 violations—for unlawful search and seizure, excessive and deadly force, and municipal policies and practices of constitutional deprivations—while the District Attorney's office indicted the defendants for "tampering with governmental documents and theft by a public servant . . . ;" "engaging in organized criminal activity to commit aggregate theft by a public servant and tampering with a governmental record . . . ;" "misapplication of fiduciary property . . . ;" "first degree homicide for the death of Tuttle . . . ; and felony murder for the deaths of Tuttle and Nicholas . . . ." 2021 WL 2641439, at *1–2.

and . . . protect[] the truth-seeking function of the criminal proceeding."[19] Accordingly, the Court finds that the government's intervention in the pending civil case is mandatory.

## B. The Government's Motions to Stay

The Court may, at its discretion and if the interests of justice so require, stay a civil action pending resolution of a parallel criminal proceeding.[20] In the Fifth Circuit, the decision to do so is generally guided by the following six factors: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest." *Off. Comm. of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan*, No. 19-10341, 2019 WL 3858953, at *2 (E.D. La. Aug. 16, 2019). The Court will consider each factor in turn.

### i. *The extent to which the criminal and civil cases present overlapping issues*

"In general, 'the similarity of issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay.'" *Fed. Deposit Ins. Corp. v. Ernst & Young LLP*, No. 20-1259, 2020 WL 3960345,

---

[19] R. Doc. No. 189-1, at 2.

[20] *United States v. Kordel*, 397 U.S. 1, n. 27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution[.]").

at *5 (E.D. La. July 13, 2020) (quoting *Dominguez v. Hartford Fin. Servs. Grp., Inc.*, 530 F. Supp. 2d 902, 906–07 (S.D. Tex. 2008)). In the instant case, there is substantial overlap between the issues underlying both the civil and the criminal proceedings. Specifically, the issue of the extent of First NBC's directors' knowledge of the financial situations of First NBC and its borrowers is at the heart of both the criminal and the civil cases.

In the criminal case, "the United States asserts that First NBC Bank officers Ryan, Burnell, Calloway, and Beebe conspired to disguise the true financial status of certain borrowers and their troubled loans in order to conceal the true financial condition of the bank from the bank's board, auditors, and examiners."[21] The extent of knowledge of the First NBC officials who signed warranty statements to the insurance companies providing First NBC with excess directors' and officers' liability insurance is likewise central to the civil case. In the civil case, if the warranties the officials signed—attesting that they had no knowledge of any act or omission that could give rise to a claim under the excess liability insurance policies—were false

---

[21] R. Doc. Nos. 187, 189. *See* E.D. La. Case No. 20-65, R. Doc. No. 65, at 7 ("It was further part of the scheme and artifice to defraud that **RYAN, BURNELL, CALLOWAY, BEEBE** and others masked the true financial condition of troubled loans in many ways, including (1) overdrawing demand deposit accounts to make loan payments; (2) using Bank loan proceeds from nominee and related entities, at times without authorization from the borrower, to make loan payments; and (3) increasing, extending, or renewing existing loans, and issuing new loans, to hide borrowers' inability to make loan payments." (emphasis in original)).

when made because the officials were in fact aware of the threat of litigation against the bank's directors and officers, the insurance policies may be unenforceable.[22]

Thus, the question of the extent of First NBC's officials and directors' knowledge about the financial condition of the bank and its borrowers is central to both the criminal and civil actions; the witnesses and documentary evidence critical to one will be critical to the other. Accordingly, the Court finds that this factor weighs in favor of granting the stay.

### ii.   *The status of the criminal case*

The second factor to be considered when determining whether a stay is appropriate is the status of the criminal case, including whether the defendant has been indicted. As another section of this court found in *Kinzler v. First NBC Bank Holding Co.*, No. 16-4243, 2021 WL 5280606 (E.D. La. Nov. 12, 2021) (Morgan, J.), a case also arising from the collapse of First NBC, this Court finds that the second factor in the Fifth Circuit's test weighs in favor of granting the stay.

In *Kinzler*, the government sought a stay of a civil action while a criminal action—the same criminal action at issue in the instant case—was pending. As the court noted in *Kinzler*, "[i]n a criminal case where the defendant has already been indicted, there is a higher likelihood that a defendant could make incriminating statements." *Id.* at *3 (quoting *BY Equities, LLC v. Carver Theater Prods., LLC*, No. 20-1290, 2021 WL 1577839 (E.D. La. Apr. 21, 2021) (Barbier, J.)). Because the court

---

[22] *See* E.D. La. Case No. 22-9, R. Doc. No. 1, at 4–5; E.D. La. Case No. 22-2070, R. Doc. No. 1, at 6–8.

found in *Kinzler* that "[i]t is undisputed that [Ashton] Ryan has been indicted for the same acts underlying the allegations of this case[,]" *id.*, it held that the second factor weighed in favor of a stay. Ashton Ryan, Jr. ("Ryan") is a party to the civil case pending before this Court and has also been undisputedly indicted in the parallel criminal action. Accordingly, the Court finds that the second factor weighs in favor of granting the stay.

### iii.     *The interests of the plaintiffs weighed against the prejudice to the plaintiffs caused by a delay*

The third factor requires the Court to consider the interest of the plaintiffs in a speedy resolution of the civil action, balanced against the prejudice to the plaintiffs caused by the delay. The Directors' opposition to the government's motions asserts that, "given the depleting insurance proceeds, the interests of the Directors, who need insurance proceeds to fund their defenses in the myriad proceedings involving the Bank, weigh heavily in favor of allowing the initial disclosures to take place."[23]

Here too *Kinzler* is instructive. In *Kinzler*, the plaintiff Mary Beth Verdigets— former Chief Financial Officer and later Treasurer of First NBC—opposed defendant Ryan's motion for a stay. Verdigets "argue[d] [that] a stay on the claims against her would cause her prejudice because, during the stay, Ryan and other officers [would] continue to draw down on the directors and officers insurance they are all using to fund their defenses, leaving Verdigets with fewer funds to defend herself." 2021 WL 5280606, at *4. The court found Verdigets' arguments of prejudice due to the

---

[23] R. Doc. No. 197, at 5–6.

possibility of diminished insurance funds to be "premised on contingencies upon contingencies" and therefore too speculative to warrant denying the stay. *Id.* at *3.

The possibility of dwindling coverage is hardly less speculative in the instant case. Though the Directors' opposition states that just $2.3 million remains of the coverage fund provided by second-layer insurer AIG and further alleges that the remaining excess insurers[24] have indicated that they will assert "'warranty defenses' to preclude insurance coverage[,]"[25] the Directors have not established how staying the pending civil case will cause actual prejudice to their interests. If this civil action is paused, the Directors' legal fees will also be paused. Despite their contention that there are "myriad proceedings" involving First NBC, the Directors' opposition does not provide any evidence of any other specific, on-going litigation to which they are parties which would incur attorneys' fees. The prejudice the Directors allege is not anything more than mere speculation.

The Directors have likewise not provided any factual support that the limited initial disclosures they requested in lieu of a complete stay would not implicate any issues in common with the criminal case. Moreover, considering that this Court has previously denied motions for summary judgment in this case as premature,[26] the Directors have not offered evidence that allowing the initial disclosures "may result

---

[24] Continental Casualty Company, Great American, and Federal Insurance Company.
[25] R. Doc. No. 197, at 2–3.
[26] *See* R. Doc. No. 172.

in the termination of this litigation[.]"[27] Put simply, the risks do not outweigh the rewards. Accordingly, the third factor weighs in favor of granting the stay.

   *iv. The interests of and burden on the defendants*

  The fourth factor asks the Court to consider the interests of the defendants, and the burden that granting the stay would place upon them. In its opposition to the government's motions, Illinois National presses for a narrowly tailored stay—if the Court does not see fit to deny the government's motions entirely—stating that "Illinois National would prefer to avoid letting many months pass without making any progress whatsoever towards completing the discovery that will be necessary in this coverage litigation."[28] However, "in evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim." *BY Equities*, 2021 WL 1577839, at *3 (quoting *Hansen v. Thorpe*, No. 18-6203, 2018 WL 6523129, at *2 (E.D. La. Dec. 12, 2018)). And, in cases where courts have declined to grant complete stays, the government's requested stay had been far broader than the request before this Court. *See Tajonera*, 2015 WL 893447, at *9 (granting only a limited stay in a case where an indictment had not yet been handed down because "the stay requested by the government, which [was] apparently unconditional and for unlimited duration, presents a high risk [of] prejudicing the defendants in this litigation . . . ."). Illinois

---

[27] R. Doc. No. 197, at 1.
[28] R. Doc. No. 198, at 2–3.

National has not presented any evidence of prejudice beyond the general prejudice to its interest in resolving the civil case sooner rather than later, which is insufficient.[29]

In his opposition to the government's motions, Beebe more forcefully advances a similar argument as that proffered by the Directors—namely, that staying the civil litigation would risk prejudicing the interests of the parties dependent upon the directors' and officers' liability insurance funds to pay their attorneys' fees. Beebe asserts that the de facto result of granting the government's motions to stay the civil case would be to deny him the right to the counsel of his choice, in violation of the Sixth Amendment of the Constitution.[30] Setting aside Beebe's implicit allegations of nefarious motives on the part of the government for seeking to stay the proceedings[31]—for which he offers no factual evidence beyond the mere fact that the government sought a stay at all—Beebe's claims are without merit.

"It is beyond peradventure that the Sixth Amendment grants an accused an absolute and unqualified right to have the assistance of counsel for his defense." *United States v. Brown*, 591 F.2d 307, 310 (5th Cir. 1979). Nonetheless, "while the right to select and be represented by one's preferred attorney is comprehended by the

---

[29] As also noted in the discussion of the Directors' arguments above, Illinois National has not provided the Court with sufficient evidence to show that even limited discovery would not implicate any matters also at issue in the criminal case. Illinois National has likewise not offered evidence that limited discovery would produce materials sufficient to meet the evidentiary burden of any future dispositive motions.

[30] R. Doc. No. 199, at 13–14.

[31] *Id.* ("[T]he government's constitutional mandate is to *avoid* interfering with a criminal defendant's lawful receipt of funds for his defense: its interest is *not* in making motions to ensure Mr. Beebe loses funding for his defense." (emphasis in original)).

Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also Brown*, 591 F.2d at 310 ("Indeed, this Court has held that the Sixth Amendment does not afford a defendant an absolute and unqualified right to counsel of choice even when counsel is retained.").

The Supreme Court has stated, in no uncertain terms, that "a defendant may not insist on representation by an attorney *he cannot afford* or who for other reasons declines to represent the defendant." *Wheat*, 486 U.S. at 159 (emphasis added); *accord United States v. Scully*, 882 F.3d 549, 553 (5th Cir. 2018). Where the defendant's insistence upon representation by particular counsel threatens the fair and efficient administration of justice, the defendant's general prerogative to retain counsel of his or her choice may be circumscribed. *See United States v. Hughey*, 147 F.3d 423, 429 (5th Cir. 1998) ("There are many circumstances in which purely private concerns or the orderly administration of justice may require that a defendant's first, or even second, choice of counsel must give way."). Beebe may have a constitutional right to counsel, but he does not have a constitutional right to counsel he cannot afford.

Even if the "contingencies upon contingencies," *Kinzler*, 2021 WL 5280606, at *3, do come to pass and the directors' and officers' liability insurance funds are fully depleted, Beebe has additional avenues he may use to retain his current counsel. As noted by the government in its reply to Beebe's opposition, Beebe's current counsel "is on the Criminal Justice Act panel for the Eastern District of Louisiana" and "Beebe

is likely entitled to funds through the Criminal Justice Act for e-discovery review costs, even with retained counsel."[32] Given these means to retain his desired counsel, and the boundaries of the Sixth Amendment's guarantee of the right to counsel, Beebe has not shown prejudice to his interests sufficient to warrant denying the stay.

By contrast, denying the stay would burden Ryan, a defendant to both the civil litigation and to the criminal proceedings. "If the defendant would be burdened by civil discovery on the same issues as a pending criminal case, this factor weighs in favor of a stay." *Hansen,* 2018 WL 6523129, at *3. As previously discussed, there is substantial overlap between the factual issues underlying both the civil and the criminal proceedings. As another section of this Court held in a related case,

> the information Ryan would be forced to produce during civil discovery regards the very same issues in the pending criminal case. Should this Court deny the motion to stay, Ryan would "be forced to choose between [his] civil discovery obligations and [his] ability to assert [his] Fifth Amendment privilege against self-incrimination," *Waste Mgmt. of La., LLC v. River Birch, Inc.*, No. 11-2405, 2012 WL 520660, at *5 (citing *Wehling v. CBS*, 608 F.2d 1084 (5th Cir. 1980)), and as such would be greatly prejudiced.

*BY Equities*, 2021 WL 1577839, at *3. Considering the absence of evidence that granting the stay would prejudice either Illinois National or Beebe, and the danger that denying the stay would substantially prejudice Ryan, the Court finds that the fourth factor weighs in favor of granting the stay.

v.      *The interests of the courts*

---

[32] R. Doc. No. 214, at 3.

19

Granting a stay will undoubtedly delay the resolution of the civil action pending before this Court. However, the Court's interest in timely resolution of litigation does not outweigh the Court's interest in "safeguarding the rights of all parties[,]" including defendants to the pending criminal action. *Off. Comm. of Unsecured Creditors*, 2019 WL 3858953, at *4.

The danger posed to the fair administration of justice in the criminal action by allowing discovery to proceed in the civil action is significant. "Legal issues are contextualized by facts and the Court's ruling on those issues would invariably require it to consider and comment upon the facts presented by both sides." *Fed. Deposit Ins. Corp.*, 2020 WL 3960345, at *7. In resolving any future dispositive motions, this Court would need to make determinations regarding questions of fact and law that could taint public perception or inadvertently tamper with witness recollection. "The legal issues presented in a 12(b) motion do not exist in a vacuum, and the facts underlying the allegations in the Complaint and the assertion of Defendants' objections are inherently related to those facts at issue in the criminal investigation." *Id.* at *5. On balance, the Court's interest in protecting the constitutional rights of criminal defendants and the integrity of criminal proceedings weighs in favor of granting the stay.[33]

---

[33] The Directors and Illinois National both requested that only a partial, "narrowly tailored" stay be granted, to allow the parties to the civil action to either exchange initial disclosures or to continue discovery on limited issues. *See* R. Doc. No. 197, at 5–6; R. Doc. No. 198, at 2 ("Illinois National requests that any stay be narrowly tailored. It seems likely that *some* discovery could proceed in the coverage litigation without running afoul of the Government's interests."). The Court is unconvinced that there are "parts of the civil and criminal cases [that] do not overlap and otherwise do

<em>vi.    The public interest</em>

The sixth and final factor likewise weighs in favor of granting the government's motions to stay. The public has a "well-deserved interest in seeing that criminal matters are handled thoroughly and expeditiously, without being compromised by concurrent civil matters. The public also has a strong interest in allowing law enforcement officials to perform their jobs, uncover evidence of criminal activity, and bring those persons responsible for criminal activity to justice." *Acad. Place, LLC v. Ryan*, No. 18-10881, 2019 WL 3974793, at *3 (E.D. La. Aug. 22, 2019).

Weighing these six factors, the Court finds that the interests of justice require granting the government's motions to stay the civil action before the Court, pending resolution of the parallel criminal proceeding.

## C. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the government's motions[34] to intervene and to stay are **GRANTED**;

**IT IS FURTHER ORDERED** that this matter is **STAYED AND ADMINISTRATIVELY CLOSED**, pending final judgment in *United States v. Ryan*, E.D. La. Case No. 20-65;

---

not pose a risk of interference with each other," R. Doc. No. 197, at 6, and finds that granting only a partial stay would not adequately protect the government and the public's interests in ensuring the integrity of criminal proceedings.

[34] R. Doc. Nos. 187, 189.

**IT IS FURTHER ORDERED** that this matter may be reopened by any party upon written motion filed within thirty days of entry of final judgment in *United States v. Ryan*, E.D. La. Case No. 20-65.

New Orleans, Louisiana, September 19, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**