UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**WILLIAM D. AARON, JR. ET AL.**                            **CIVIL ACTION**

**VERSUS**                                                                        **No. 22-9**
                                                                                **c/w 22-2070**
                                                                                **c/w 20-1253**
                                                                                **c/w 22-4518**
                                                                                **c/w 19-10341**
                                                                                **c/w 20-3189**
                                                                                **c/w 23-5056**
                                                                                **REF: 19-10341**

**ILLINOIS NATIONAL INSURANCE**                    **SECTION I**
**COMPANY ET AL.**

## ORDER & REASONS

Before the Court are two opposed motions to dismiss.[1] The Federal Deposit Insurance Corporation ("FDIC") filed a motion to dismiss the complaint for failure to state a claim, arguing that the FDIC is the rightful owner of the claims alleged by plaintiff Stephen B. Darr as Litigation and Distribution Trustee (the "Trustee" or "plaintiff") for First NBC Bank Holding Company ("Holding Company").[2] Plaintiff filed a motion to dismiss the FDIC's complaint in intervention, arguing that the complaint is based upon claims owned by the Holding Company and the complaint in intervention is procedurally improper because it is based on a declaratory judgment request.[3] Plaintiff also filed a request for oral argument,[4] which the Court finds to be

---

[1] R. Doc. No. 340, 341.
[2] R. Doc. No. 340.
[3] R. Doc. No. 341.
[4] R. Doc. No. 436.

unnecessary. For the reasons set forth below, the Court grants in part and denies in part the FDIC's motion to dismiss. The Court also grants in part and denies in part the plaintiff's motion to dismiss.

## I. FACTUAL BACKGROUND

This civil action stems from the failure of First National Bank of Commerce (First NBC" or the "Bank").[5] At issue in this motion are claims by the Trustee of the Holding Company to recover damages suffered by the Holding Company.[6] The complaint names as defendants the Chief Executive Officer of First NBC who served on the board of the Holding Company, the Chief Financial Officer of the Holding Company, the Chief Credit Officer for both First NBC and the Holding Company, the General Counsel for First NBC, former officers of the Holding Company, Ernst & Young LLP ("EY"), which provided audit services to the Holding Company, and specific auditors.[7]

The FDIC moved to intervene in this action claiming that the FDIC as receiver for First NBC owned the claims asserted in the complaint.[8] U.S. Magistrate Judge Michael North granted the FDIC's motion to intervene.[9] The FDIC then filed a motion to dismiss on the grounds that the Trustee does not own the claims and, therefore,

---

[5] The extensive history of the collapse of First NBC need not be discussed here. Another section of this Court stated that claim ownership was a threshold matter. Case No. 19-10341, R. Doc. No. 141.
[6] R. Doc. No. 1. The claims were originally filed by the Official Committee of Unsecured Creditors of First NBC Bank Holding Company. The Trust, however, was later substituted as plaintiff. Case No. 19-10341, R. Doc. No. 122.
[7] Case No. 19-10341, R. Doc. No. 1, at 9–10.
[8] Case No. 19-10341, R. Doc. No. 119.
[9] Case No. 19-10341, R. Doc. No. 130.

2

lacks standing, and that the Trustee does not state a claim for relief.[10] The Trustee filed a motion to dismiss the FDIC as a party, arguing that the FDIC is not the rightful owner of the direct claims brought on behalf of the Holding Company against its own fiduciaries.[11]

## II. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation omitted) (internal quotation marks omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of *each element* of the plaintiffs' claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (emphasis added) (citing

---

[10] Case No. 19-10341, R. Doc. No. 147, at 1–2.
[11] Case No. 19-10341, R. Doc. No. 148, at 1.

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). It "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

### III.   ANALYSIS

**a. Whether the FDIC's Intervenor Complaint Is Procedurally Proper**

Plaintiff argues that the FDIC's complaint should be preliminarily dismissed because it improperly seeks a declaratory judgment, which is only a remedy and not itself a claim.[12] Plaintiff is correct that the Declaratory Judgment Act "cannot create a cause of action where there is no risk of the future lawsuit from which the plaintiffs seek prospective relief, as there is no case or controversy." *Braidwood Mgmt. v. EEOC*, No. 22-10145, 2023 U.S. App. LEXIS 15378, at *32 (5th Cir. June 20, 2023). The Declaratory Judgment Act only authorizes a federal court to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a).

---

[12] Case No. 19-10341, R. Doc. No. 148-1, at 12.

But declaratory judgment claims are inherently anticipatory. "In a declaratory judgment action, the parties litigate the underlying claim, and the declaratory judgment is merely a form of relief that the court may grant." *Val-Com Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 401 (5th Cir. 2011). In the present action, the FDIC asks the Court for a declaratory judgment regarding the ownership of the claims at issue. The Court would be declaring the legal right of either the FDIC or the Trustee to bring the underlying claims. Accordingly, there is an underlying case or controversy for the court to address.

### b. Ownership of the Claims

*i. The Standard for Determining Ownership of Claims Pursuant to § 1821(d)(2)(A)(i)*

The parties' motions ask the Court to determine the ownership of the pleaded claims. More specifically, the Court must decide whether the FDIC, as receiver, succeeds the Bank in interest with respect to claims brought by the Bank's Holding Company's former investors and creditors against the Holding Company's fiduciaries pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").

The text of the FIRREA explains that the FDIC, as receiver, succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i). The Supreme Court has explained that the "language [of § 1821(d)(2)(A)(i)] appears to indicate that the FDIC as receiver 'steps into the shoes'

5

of the failed [entity] . . . obtaining the rights 'of the insured depository institution' that existed prior to receivership." *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994).

While the U.S. Court of Appeals for the Fifth Circuit has not yet addressed whether § 1821(d)(2)(A)(i) confers ownership of claims asserted by the trustee of a holding company to the FDIC, cases from other circuits are instructive. Most courts addressing this issue have held that the statute transfers the derivative claims of a bank's shareholders to the FDIC, but not the direct claims. This analysis requires considering state law to determine whether a claim is direct or derivative. The FDIC, based on its reading of the statute and a U.S. First Circuit Court of Appeals case, argues that there is no statutory distinction between direct and derivative claims.[13] It is helpful to begin with an examination of the cases that have addressed this specific issue.

In *In re Beach First Nat. Bancshares, Inc.*, the U.S. Fourth Circuit Court of Appeals held that a trustee of a bank's holding company could pursue claims where the harm suffered by the holding company was distinct from, meaning not derivative of, the harm suffered by the bank. 702 F.3d 772, 780 (4th Cir. 2012). In deciding that the trustee could not bring certain claims, the court explained that those claims "occurred at the Bank—not [parent company]—level. While the Directors wore, so to speak, fiduciary hats at both the parent and subsidiary level, the Trustee has not pled a harm or an act that occurred at the [parent company] level that did not

---

[13] Case No. 19-10341, R. Doc. No. 153, at 9.

simultaneously and primarily occur at the Bank (subsidiary) level." *Id.* at 778. The key distinction in *In re Beach* is the level where the harm occurred.

In *Lubin v. Skow*, the U.S. Eleventh Circuit Court of Appeals similarly considered where the harm occurred when it affirmed a dismissal of a complaint that alleged only derivative harm to the holding company. 382 F. App'x 866, 873 (11th Cir. 2010). In that case, the court determined that "[t]he alleged harm to the Holding Company stems from the Bank officers' management of Bank assets. This harm is inseparable from the harm done to the Bank." *Id.* at 872–73. "While the Complaint alleges that the Holding Company suffered a unique harm because it assumed $34 million of debt to finance the Bank's expanded operations, debt is not an intrinsic harm." *Id.* at 872. The court concluded that "[b]ecause the Complaint fails to plead sufficient facts connecting any act or omission by the defendants with a harm to the Holding Company that is distinct from the harm the Holding Company suffered when its investment in the Bank soured, the Complaint states no claim for which the Trustee may recover." *Id.* at 873. Again, the court emphasized whether the claims concerned harm that was distinct from the harm suffered by the bank.

The U.S. Seventh Circuit Court of Appeals, when considering the allocation of claims between the FDIC and stockholders, also found that the key distinction is whether the claim is direct or derivative. *Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014). "Section 1821(d)(2)(A)(i) transfers to the FDIC only stockholders' claims "with respect to . . . the assets of the institution"—in other words, those that investors (but for § 1821(d)(2)(A)(i)) would pursue derivatively on behalf of the failed bank. This is

why we have read § 1821(d)(2)(A)(i) as allocating claims between the FDIC and the failed bank's shareholders rather than transferring to the FDIC every investor's claims of every description." *Id.*

The FDIC takes issue with *Levin*'s assumption that the direct-derivative distinction was required by statute.[14] *Levin* made this assumption based not only on the agreement of the parties, but also on binding Seventh Circuit precedent and other persuasive precedent that had uniformly applied the distinction based on interpretations of § 1821(d)(2)(A)(i). *Id.* at 669 ("Irwin, the FDIC, and the Managers all understand this language to allocate to the FDIC not only the closed banks' rights but also any claims that investors might assert derivatively on behalf of the closed banks. Courts of appeals (including this one) routinely describe § 1821(d)(2)(A)(i) the same way.") (citing *Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir.1979); *Courtney v. Halleran*, 485 F.3d 942, 950 (7th Cir.2007); *Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir.1998)).

The U.S. Tenth Circuit Court of Appeals agreed with the courts in *Beach*, *Miller*, and *Lubin*, explaining that "[i]f the Holding Company's claims are based on harm derivative of injuries to the Bank, then they qualify as claims of a shareholder 'with respect to the [bank] and the assets of the [bank]' and belong to the FDIC. § 1821(d)(2)(A)(i)." *Barnes v. Harris*, 783 F.3d 1185, 1193 (10th Cir. 2015).

In the Ninth Circuit, the U.S. Court of Appeals conducted its analysis of a bank's stockholder's claim in two parts: first, considering the nature of the claims and

---

[14] Case No. 19-10341, R. Doc. No. 153, at 13.

second, considering the FDIC's right to bring the claims. *Pareto v. F.D.I.C.,* 139 F.3d 696 (9th Cir. 1998). The court found the claims were derivative and, accordingly, dismissed the claim by the bank's stockholder for lack of standing as the claims were the FDIC's to pursue. *Id.* at 701. "Plainly, the section vests all rights and powers of a stockholder of the bank to bring a derivative action in the FDIC." *Id.* at 700.

A U.S. First Circuit Court of Appeals decision held that FIRREA transfers both direct and derivative claims to the FDIC. *Zucker v. Rodriguez,* 919 F.3d 649, 655 (1st Cir. 2019) ("We reject the Administrator's favored reading of § 1821(d)(2)(A), which limits the provision's key language to claims that shareholders may assert derivatively under state law on behalf of the institution in receivership."). The *Zucker* decision, by its own terms, should be narrowly read. *Id.* ("We do not establish any broader principles, and future claims by holding companies and other shareholders of banks in FDIC receivership will need to be evaluated on their own terms."). Despite denying a textual distinction between direct and derivative claims, the court's conclusion rested on a finding that the Holding Company's "claims relate to or concern the assets of the Bank." *Id.* 656.

While *Zucker* rejects an express distinction between direct and derivative claims, it does not reject a "source of the harm" inquiry. In fact, similar to *Lubin*, the court considered where the harm occurred and whether it was distinct from the harm to the bank. Because the harm to the holding company was a result of the harm to the bank, the court concluded that the claim concerned the assets of the bank and was owned by the FDIC. *Zucker v. Rodriguez,* 919 F.3d 649, 656 (1st Cir. 2019)

("[T]hat the claims depend on the Holding Company's proving that malfeasance by its directors depressed the Bank's assets means that the claims relate to or concern the assets of the Bank.").

In light of these precedents, it appears the critical inquiry is whether the harm that the trustee alleges is distinct from the harm suffered by the bank. While *Zucker* may not have expressly applied a direct and derivative distinction, the function of the inquiry is the same: to determine whether the harm to the claimant occurred indirectly through harm to the Bank or occurred directly through harm to the claimant.

This interpretation is consistent with the text of § 1821(d)(2)(A)(i). Pursuant to that statute, the FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." The text strongly suggests that the FDIC should succeed to claims that are in name against the Holding Company, but are actually aimed at the assets of the bank.

*ii. Louisiana Direct/Derivative Distinction*

As mentioned previously, whether a claim is direct or derivative is a matter of state law. *Sess. Fixture Co., Inc. v. Pride Mktg. and Procurement, Inc.*, No. CV 16-9373, 2016 WL 7210349, at *3 (E.D. La. Dec. 13, 2016) (Africk, J.) ("[W]hether a claim is derivative or direct is determined by state law.") (citing *Atkins v. Hibernia Corp.*,

182 F.3d 320, 323 (5th Cir. 1999)). "Louisiana courts have followed the American Law Institute's test for distinguishing direct from derivative claims." The test provides:

> If a shareholder can recover in a suit only by showing that the corporation was injured, then the suit is considered derivative in nature, even if the corporate injury does cause indirect harm to the shareholder, while if a recovery can be granted to [the] shareholder without proof of a corporate loss, then the suit is considered to be direct.

*Id.* (quoting 8 La. Civ. L. Treatise, Business Organizations § 34.03 (2d ed. 2016)).

"A classic example of a derivative lawsuit would be a shareholder's suit against a corporation for unlawful corporate actions that diminished the overall value of the corporation, and thereby diminished the value of the individual shareholder's stock." *Id.* "In contrast, a direct action would be appropriate where the shareholder seeks to vindicate some right held by the shareholder individually, 'such as a right to vote or to protect against dilution of voting or financial rights, to inspect books or records, to receive [an individual] dividend [that other shareholders received], or to recover for fraud in connection with the purchase or sale of his stock.'" *Id.* (quoting 8 La. Civ. L. Treatise, Business Organizations § 34.03 (2d ed. 2016)).

Therefore, to determine who owns the claims brought by the trustee, the Court must determine whether the claims alleged by the shareholders are based on rights they hold individually or based on rights held by First NBC. To determine the ownership of the claims, the Court must individually consider each of the counts alleged in the complaint.

 *iii. Application to Plaintiff's Claims*

11

Plaintiff filed a six-count complaint. The first three counts are claims for breach of fiduciary duties against the officer defendants. The first is for deliberate failure to implement and maintain effective risk management procedures and effective internal controls.[15] The second is for failure to provide accurate and complete information to the holding company's board.[16] The third is for wrongly causing the holding company's board to approve unearned compensation and to inject capital into the bank.[17]

The fourth count is for conspiracy and aiding and abetting against defendant Gregory St. Angelo, First NBC's former general counsel.[18] The fifth is a breach of contract claim against defendant EY.[19] The sixth is an accounting malpractice and professional negligence claim against the Auditor Defendants.[20]

The first two claims and part of the third claim clearly rest on the harm to the Bank. In the first count, plaintiff alleges that the directors and officers breached their fiduciaries duties by failing to protect the Holding Company from the Bank's mismanagement which harmed the Holding Company through "causing a waste of the corporate assets" on the Bank.[21] Similarly, in the second count, the harm complained of by the directors' and officers' alleged failure to provide complete and

---

[15] Case No. 19-10341, R. Doc. No. 1, at 111–13.
[16] *Id.* at 113–15
[17] *Id.* at 115–17.
[18] *Id.* at 117–18.
[19] *Id.* at 118–19.
[20] *Id.* at 119–21.
[21] *Id.* at 113.

accurate information is that the Holding Company acquired substantial debt.[22] In count three, plaintiff claims that the Holding Company and/or its Board made capital contributions to the bank without consideration of material information because the Officer Defendants "withheld and concealed from the Holding Company's Board information which would have disclosed that the Bank was significantly undercapitalized."[23] All of these claims rest on the undercapitalization of the Bank. As explained in *Lubin*, "debt is not an intrinsic harm." 382 F. App'x at 872. Instead, the harm is the Bank's insolvency, which made the Bank an unprofitable investment for the Holding Company. These claims are based on "corporate actions [by the Bank] that diminished the overall value of the [the Bank]." *See Sess. Fixture Co., Inc.*, 2016 WL 7210349, at *3. Accordingly, these are derivative claims that belong to the FDIC.

In count three, plaintiff also alleges that "the Officer Defendants caused the Holding Company's Board to pay them lucrative, unearned compensation packages totaling nearly $8 million."[24] The complaint states that, "[a]t the same time they were perpetuating the insolvency of the Bank and adding to the Holding Company's growing losses, the Officer Defendants caused the Holding Company's Board to approve millions of dollars in unjust compensation to themselves."[25] The harm is not the compensation itself but rather that the Officer Defendants were receiving compensation while allegedly failing to disclose and further contributing to the

---

[22] *Id.* at 114.
[23] *Id.* at 116.
[24] *Id.* at 117.
[25] *Id.* at 38–39.

undercapitalization of the Bank which led to the insolvency of the Holding Company. The harm suffered by the Holding Company through these compensation packages is no different from the harms described above and is, in fact, based on the same allegations. This harm is a harm to the Bank that derivatively impacted the Holding Company. Accordingly, this portion of the claim also belongs to the FDIC.

Likewise, the fourth claim rests on harm to the Bank. Plaintiff alleges that defendant St. Angelo and the officer defendants conspired to conceal the declining condition of the bank, conceal illegal practices conducted by the bank, conceal improper investments, induce the Holding Company to inject capital, and receive unjust benefits.[26] The harm suffered by the Holding Company is not based on the Holding Company's own harm, but based on the harm suffered by the Bank. "That the Bank officers' poor business choices reduced the value of the Holding Company's investment does not alter the fact that the harm is decidedly a derivative one." *See Lubin*, 382 F. App'x at 872.

In the fifth and sixth claims, plaintiff claims that EY and the Auditor Defendants breached duties owed to the Holding Company. The complaint alleges that EY provided engagement letters to the Holding Company to perform audits and that EY breached contractual duties and express promises made to the Holding Company.[27] Because the complaint alleges that the contract is between EY and the Holding Company, not EY and the Bank, the Holding Company has its own right to

---

[26] *Id.* at 118.
[27] *Id.* at 118.

14

sue on the breach of contract. That claim, as alleged, is a direct claim, not a derivative one. Accordingly, it belongs to the Holding Company.

Similarly, the Holding Company alleges that the Auditor Defendants owed the Holding Company a duty and that their performance of that duty fell below the standard of care owed.[28] The complaint alleges that the Holding Company paid for the Auditor Defendants' auditing services.[29] The Holding Company is suing based on a direct claim of harm to the Holding Company based on the Auditor Defendants' negligence. Therefore, the claim belongs to the Holding Company.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the FDIC's motion is **GRANTED** with respect to counts 1, 2, 3, and 4 of the plaintiff's complaint. Counts 1, 2, 3, and 4 of plaintiff's complaint are **DISMISSED**.

**IT IS FURTHER ORDERED** that the FDIC's motion is **DENIED** with respect to counts 5 and 6.

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss the FDIC's complaint in intervention is **DENIED** with respect to counts 1, 2, 3, and 4 and **GRANTED** with respect to counts 5 and 6.

**IT IS FURTHER ORDERED** that plaintiff's request for oral argument is **DENIED**.

---

[28] *Id.*
[29] *Id.* at 7.

New Orleans, Louisiana, November 8, 2023.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE