## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILLIAM D. AARON, JR. ET AL.**                    **CIVIL ACTION**

**VERSUS**                                                              **No. 22-9**
**c/w 22-2070**
**c/w 20-1253**
**c/w 22-4518**
**c/w 19-10341**
**c/w 20-3189**
**c/w 23-5056**
**REF: 23-5056**

**ILLINOIS NATIONAL INSURANCE**                    **SECTION I**
**COMPANY ET AL.**

## ORDER & REASONS

Before the Court are two motions filed by Gregory St. Angelo ("St. Angelo").

The first is a motion[1] to dismiss two crossclaims[2] filed by Frank Fugetta ("Fugetta")

and Michael Lulich ("Lulich") in the U.S. Bankruptcy Court for the Eastern District

of Louisiana ("bankruptcy court") for lack of standing. Those crossclaims include a

request for a declaratory judgment "that St. Angelo is not an Insured Person under

the Policy" and an unjust enrichment claim against St. Angelo.[3] Fugetta and Lulich

have not filed any opposition to this motion, and the deadline for doing so has passed.[4]

---

[1] R. Doc. No. 426.
[2] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 67, ¶¶ 90–94.
[3] *Id.*
[4] Pursuant to Local Rule 7.5, the deadline to respond to St. Angelo's motion was
October 24, 2023.

The second is a motion[5] for partial summary judgment regarding St. Angelo's purported entitlement to receipt of certain funds that plaintiff Zurich American Insurance Company ("Zurich") deposited into the registry of the court. Defendants William D. Aaron, Jr., Herbert W. Anderson, Dale Atkins, John C. Calhoun, William Carrouche, Leander Foley III, John F. French, Leon Giorgio, Jr., Shivan Govindan, Lawrence Blake Jones, Louis Lauricella, Mark Merlo, Herman Moyse III, Grish Roy Pandit, James Roddy Jr., Charles Teamer, Joseph Toomy, and Richard Wilkinson (collectively, the "Independent Directors") oppose[6] the motion for partial summary judgment.

For the reasons that follow, the Court grants St. Angelo's motion to dismiss the crossclaims and denies St. Angelo's motion for partial summary judgment.

## I.    FACTUAL BACKGROUND

This action stems from the failure of First NBC Bank. On May 11, 2017, First NBC Bank Holding Company (the "holding company") filed a voluntary petition under Chapter 11 of the Bankruptcy Code in bankruptcy court.[7] Zurich had previously issued an insurance policy (the "policy") to the holding company, its officers and directors, and certain other individuals.[8] The policy period ran from June 9, 2015 to June 9, 2016.[9] The policy included a management liability coverage part with an

---

[5] R. Doc. No. 425.
[6] R. Doc. No. 428.
[7] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 1, ¶ 1.
[8] *Id.* ¶ 2.
[9] *Id.* ¶ 31.

2

aggregate liability limit of $15 million.[10] The policy provides coverage to "Insured Persons."[11]

St. Angelo's memorandum in support of the motion for partial summary judgment states that, while he worked at First NBC Bank, St. Angelo's role was "akin to that of an in-house counsel."[12] On March 22, 2019, St. Angelo was criminally charged with one count of conspiracy to commit bank fraud.[13] Pursuant to the policy, Zurich had previously agreed to reimburse St. Angelo's defense costs subject to a reservation of rights.[14] On June 28, 2019, St. Angelo pleaded guilty to conspiracy to commit bank fraud in accordance with a plea agreement.[15] The plea agreement states that St. Angelo "[w]aives and gives up any right to appeal or contest his guilty plea, conviction, sentence, fine, supervised release, and any restitution imposed by any judge under any applicable restitution statute, including but not limited to any right to appeal any rulings on pretrial motions of any kind whatsoever, as well as any aspect of his sentence . . ."[16]

---

[10] *Id.*

[11] *Id.* ¶ 33. The policy defines "Insured Persons" as: (1) "any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, Manager, officer, advisory director, or member of a duly constituted committee or board of the Company or their functional equivalent;" (2) "any one or more natural persons not described in Subsection 1 above who were, now are or shall become Employees of the Company;" (3) "Independent Contractors only for purposes of Insuring Clause I.B; and" (4) "any one or more natural persons described in Subsection 1 above while serving in an Outside Position[.]" E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 1-1, at 25.

[12] R. Doc. No. 425-2, at 2.

[13] E.D. La. Case No. 19-55, R. Doc. No. 1 (bill of information).

[14] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 1, ¶ 49.

[15] *See generally* E.D. La. Case No. 19-55, R. Doc. No. 57 (transcript of rearraignment).

[16] E.D. La. Case No. 19-55, R. Doc. No. 27 (plea agreement), at 3.

On July 29, 2019, Zurich notified St. Angelo that it would deny coverage to him under two exclusions of the policy—Sections IV(I) and IV(J) of the policy's Management Liability Coverage Part.[17] Sections IV(I) and IV(J) provide that Zurich "shall not be liable under this Coverage Part for Loss on account of, and shall not be obligated to defend, any Claim made against any Insured Person" that is "based upon, arising out of or attributable to any deliberately fraudulent act or omission or any willful violation of any statute or regulation committed by such Insured Person" or "based upon, arising out of or attributable to such Insured Person gaining any profit, remuneration or financial advantage to which such Insured Person is not legally entitled" if "a final and non-appealable adjudication adverse to such Insured Person in any proceeding not brought by the Insurer establishes such a deliberately fraudulent act or omission or willful violation[.]"[18] Zurich also demanded that St. Angelo return the funds previously advanced by Zurich.[19]

St. Angelo argued to Zurich that "Zurich must continue to pay his fees up until his date of sentencing" because there was no "final adjudication of guilt" until sentencing.[20] According to Zurich, St. Angelo then demanded payment for all outstanding defense costs not yet reimbursed under the policy.[21] On September 17, 2019, Zurich inquired whether any of the other Insured Persons receiving funds from

---

[17] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 1-1, at 26–27.
[18] *Id.*
[19] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 1, ¶ 50.
[20] *Id.* ¶ 53.
[21] *Id.*

the policy objected to Zurich's continued payment of fees for St. Angelo.[22] Twenty-three insured persons objected to continued payment, arguing that Zurich should not make further reimbursements to St. Angelo for numerous reasons, including that "St. Angelo should not be allowed to drain the policy's limit of liability funds, which he is contractually obligated to repay, when those funds potentially could be used for the benefit of other insureds."[23]

Zurich then filed a complaint for interpleader and declaratory relief in bankruptcy court on January 24, 2020.[24] The bankruptcy court later granted Zurich's motion for interpleader deposit,[25] and Zurich deposited $270,872.85 into the registry of the court on March 5, 2020.[26] On August 10, 2021, the bankruptcy court allowed a deposit of supplemental interpleader funds into the registry of the court.[27] Subsequently, the bankruptcy court stayed the case from October 6, 2020 "until the conclusion of the criminal proceedings against St. Angelo."[28] Following an unopposed motion by Gregory St. Angelo, the bankruptcy court lifted the stay on September 11, 2023.[29] This Court then granted the Independent Directors' unopposed motion to withdraw the reference to the bankruptcy court because the case involved questions

---

[22] *Id.* ¶ 54.
[23] *Id.* ¶¶ 54–55.
[24] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 1.
[25] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 64.
[26] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 65.
[27] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. Nos. 131, 132.
[28] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 124.
[29] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. Nos. 140.

related to the interpretation of the Zurich policy, which was also at issue in other cases before this Court.[30]

St. Angelo subsequently filed the instant motions, setting them for submission on November 1, 2023. St. Angelo's motion for partial summary judgment argues that St. Angelo is entitled to receipt of the funds that Zurich deposited into the Court's registry. Specifically, St. Angelo asks the Court to find that only he is entitled to the policy proceeds, to disburse the proceeds in their entirety to him, and to issue a judgment declaring that the two exclusions in the policy do not apply because a "final adjudication" has not occurred.[31] The Independent Directors respond that, since St. Angelo pleaded guilty in his capacity as a borrower of First NBC Bank, he does not qualify to recover as an "Insured Person" pursuant to the policy.[32] The Independent Directors also contend that St. Angelo is precluded from seeking coverage under a separate provision of the policy because his criminal conduct constitutes a willful criminal act violative of a statute resulting in a financial advantage to which he was

---

[30] R. Doc. No. 4.

[31] R. Doc. No. 425, at 1–2.

[32] R. Doc. No. 428, at 1. Specifically, the Independent Directors emphasize that Zurich is obligated to pay for claims made against "Insured Persons" for "Wrongful Acts[,]" which the policy defines as "any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted by any of the Insured Persons, individually or otherwise, *in their capacity as such*, or in an Outside Position; or . . . any matter claimed against the Insured Persons *solely by reason of their serving in such capacity* or in an Outside Position." *Id.* at 4–5 (quotation omitted).

not entitled.[33] Finally, the Independent Directors argue in the alternative that "fact issues abound precluding summary judgment here[.]"[34]

St. Angelo's motion to dismiss Fugetta and Lulich's crossclaims against him suggests that these crossclaims should be dismissed without prejudice for lack of standing.[35] As stated, Fugetta and Lulich have not filed an opposition to this motion.

On November 15, 2023, St. Angelo was sentenced to 48 months in prison.[36] Despite the waiver of his right to appeal contained in the plea agreement, he filed a *pro se* notice of appeal on November 29, 2023.[37]

## II.    LAW & ANALYSIS

### a.  Motion to Dismiss Crossclaims for Lack of Standing

The Court first considers St. Angelo's motion to dismiss Fugetta and Lulich's crossclaims for lack of subject matter jurisdiction. In that motion, St. Angelo first argues that "Fugetta and Lulich have not alleged a concrete or particularized injury traceable to Zurich's payment of St. Angelo's defense costs."[38] According to St. Angelo, Fugetta and Lulich "failed to allege any facts that, if proven, would show that as of the time they filed the crossclaim, they sustained an actual or imminent injury in fact traceable to Zurich's payment of St. Angelo's defense costs.[39] St. Angelo also argues

---

[33] *Id.*

[34] *Id.* at 1–2.

[35] R. Doc. No. 426, at 1.

[36] E.D. La. Case No. 19-55, R. Doc. No. 103 (amended judgment).

[37] E.D. La. Case No. 19-55, R. Doc. No. 102.

[38] R. Doc. No. 426-1, at 5.

[39] *Id.*

that Fugetta and Lulich's crossclaims should be dismissed pursuant to the prudential standing doctrine because they seek to assert Zurich's rights.[40]

As stated, Fugetta and Lulich's crossclaims include a request for a declaratory judgment "that St. Angelo is not an Insured Person under the Policy" and an unjust enrichment claim against St. Angelo.[41] Fugetta and Lulich's crossclaims are based on the allegations that Zurich paid St. Angelo approximately $641,616.57 in defense costs, that St. Angelo does not qualify as an "Insured Person" pursuant to the policy, that St. Angelo's guilty plea triggered exclusions in the policy, that St. Angelo was not entitled to receive any proceeds under the policy for his defense costs, and that Fugetta and Lulich continue to accrue additional attorney's fees covered under the policy.[42] Fugetta and Lulich also state that St. Angelo should be ordered to return to Zurich any defense costs paid to him by Zurich "to be used for the benefit of Fugetta, Lulich, and the others who were actually insured by the Policy."[43]

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Pursuant to Federal Rule of Civil Procedure 12(b)(1), "a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *Id.* (quotation omitted). Courts are to consider a Rule

---

[40] *Id.* at 5–6.
[41] E.D. La. Bankruptcy Court Case No. 20-1005, R. Doc. No. 67, ¶¶ 90–94.
[42] *Id.* ¶¶ 83, 85–88.
[43] *Id.* ¶ 89.

12(b)(1) jurisdictional argument before addressing any other arguments on the merits. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

When ruling on a Rule 12(b)(1) motion, a court may dismiss a claim or action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Spotts v. United States*, 613 F.3d 559, 565–66 (5th Cir. 2010) (quoting *St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009)). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161. If a court determines that it does not have subject matter jurisdiction over a claim, the claim is dismissed without prejudice. *See, e.g.*, *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

Article III of the U.S. Constitution limits federal jurisdiction to justiciable "Cases" and "Controversies." *Three Expo Events, L.L.C. v. City of Dallas, Tex.*, 907 F.3d 333, 340 (5th Cir. 2018). The party invoking the Court's jurisdiction must have standing to meet the "case-or-controversy" requirement. *McCardell v. U.S. Dep't of Hous. and Urb. Dev*, 794 F.3d 510, 516–17 (5th Cir. 2015). Without standing, a claim may not proceed. *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010).

The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). That party must show that the facts alleged, if proved, would confer standing upon it. *Steel Co. v. Citizens*

9

*for a Better Env't*, 523 U.S. 83, 104 (1998). Additionally, that party "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). To demonstrate Article III standing, the party must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Defs. of Wildlife*, 504 U.S. at 560). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citing *Defs. of Wildlife*, 504 U.S. at 560).

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The statute's requirement of a 'case of actual controversy' refers to an Article III case or controversy." *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007)). "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Id.* (quoting *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)). "The Court must ask (1) whether an actual controversy exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad

discretion to decide or dismiss a declaratory judgment action." *Id.* (quoting *Orix Credit All.*, 212 F.3d at 895) (internal quotations omitted).

"Although '[d]eclaratory judgments cannot be used to seek an advisory opinion advising what the law would be on a hypothetical set of facts . . . , declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit." *Frye*, 953 F.3d at 294 (quoting *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009)). Importantly, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) (Barrett, J.)).

As discussed, because they are the parties invoking the Court's jurisdiction on their crossclaims, Fugetta and Lulich bear the burden of establishing that they have standing to pursue those crossclaims. The central problem with Fugetta and Lulich's crossclaims is that they have not established an injury in fact that is fairly traceable to Zurich's payments to St. Angelo. *See Spokeo Inc.*, 578 U.S. at 338 (citation omitted). It is not clear from the crossclaims that Zurich's payments to St. Angelo would imminently affect Fugetta and Lulich's ability to recover their own defense costs because, as St. Angelo notes, they have not "alleged that the pool of funds available under the excess director and officer policies are at imminent risk of exhaustion."[44] Fugetta and Lulich—who did not file any opposition to St. Angelo's motion to

---

[44] *Id.*

dismiss—have therefore not met their burden of establishing Article III standing to pursue their crossclaims. *See Defs. of Wildlife*, 504 U.S. at 561. Accordingly, these crossclaims will be dismissed for lack of subject matter jurisdiction.[45]

### b. Motion for Partial Summary Judgment

Summary judgment is proper when, after reviewing the materials in the record, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

---

[45] "Standing encompasses two components—constitutional and prudential." *Tanner Cos., Inc. v. Reliable Onshore Servs. Co., L.L.C.*, No. 07-2745, 2008 WL 4239026, at *2 n.16 (E.D. La. Sept. 8, 2008) (Africk, J.) (quoting *Heaton v. Monogram Credit Card Bank of Ga.*, 408 F. Supp. 2d 213, 216 (E.D. La. 2005) (Barbier, J.)) The prudential standing requirement is employed to determine whether the plaintiff is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Id.* (*quoting* Heaton, 408 F. Supp. 2d at 216) (internal quotation marks omitted). Because the Court decides this motion based on constitutional standing, it need not reach the question of prudential standing.

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

13

According to St. Angelo, his motion for summary judgment "turns on one legal issue: whether the two exclusions in the Policy relied upon by Zurich may be applied to exclude St. Angelo from ongoing coverage under the policy based on St. Angelo's guilty plea."[46] St. Angelo contends that the two exclusions in the Policy which Zurich relies upon for not paying St. Angelo's defense costs "do not apply presently" because, at the time the motion was filed, a 'final adjudication'" had not occurred.[47] However, St. Angelo acknowledged that his sentencing would constitute a final adjudication.[48] Because St. Angelo has now been sentenced, his argument that a final adjudication has not occurred is moot.[49] In light of his sentencing, St. Angelo has not carried his burden of establishing that there is no genuine issue of material fact on the question

---

[46] R. Doc. No. 425-2, at 7.

[47] *Id.*

[48] *See id.* at 10 ("Here, the meaning of the term 'final adjudication' applied in the context of a federal criminal conviction based on a guilty plea is patently clear and unambiguous – it means the person has been convicted *and sentenced*. The sentencing of St. Angelo has not occurred yet."). *See also Berman v. United States*, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence. The sentence is the judgment."); Fed. R. Crim. P. 11(e) ("Finality of a Guilty or Nolo Contendere Plea. *After the court imposes sentence*, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack." (emphasis added)).

[49] Although St. Angelo has filed a *pro se* appeal in his criminal case, the Court notes that the plea agreement in that case states that St. Angelo waives the right to appeal or contest his guilty plea, conviction, sentence, fine, supervised release, and restitution. *See* E.D. La. Case No. 19-55, R. Doc. No. 27 at 3. St. Angelo only retained the right to bring a direct appeal of any sentence imposed in excess of the statutory maximum and to raise a claim of ineffective assistance of counsel in an appropriate proceeding. *Id.* The statutory maximum conveyed to St. Angelo at his rearraignment was thirty years in prison, a fine of $1 million or twice the gross gain to him or twice the gross loss to any other person. R. Doc. No. 57, at 11. St. Angelo was sentenced to 48 months in prison and a five-year term of supervised release. R. Doc. No. 103, at 2–3. The Court also ordered restitution in the amount of $56,174,549.12. *Id.* at 6.

of whether St. Angelo is entitled to obtain the policy proceeds. *See* Fed. R. Civ. P. 56(a). The Court will therefore deny St. Angelo's motion for summary judgment.

### III.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that St. Angelo's motion to dismiss Fugetta and Lulich's crossclaims is **GRANTED**.

**IT IS FURTHER ORDERED** that St. Angelo's motion for partial summary judgment is **DENIED**.

**IT IS FURTHER ORDERED** that a telephone status conference shall be held with the parties to Case No. 23-5056 to discuss the status of the case following this order. The conference is set for **Tuesday, DECEMBER 12, 2023 at 10:00 A.M.** The Court will circulate the dial-in information via email.

New Orleans, Louisiana, December 8, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**